UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ERIN ALLEN, | Case No.: 2:21-cv-00377-APG-DJA |
| Plaintiff | **Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment** |
| v. | |
| VOCATUS, LLC and SHAMOUN'S LLC, | [ECF No. 35] |
| Defendants | |

Plaintiff Erin Allen sues her former employers Vocatus, LLC and Shamoun's LLC for alleged violations of state and federal law based on her contention that she was misclassified as exempt from overtime pay and then fired after she complained to the Department of Labor (DOL). She asserts claims for (1) declaratory relief, (2) failure to pay overtime under the Fair Labor Standards Act (FLSA), (3) retaliation in violation of the FLSA, (4) failure to pay wages for all hours worked under Nevada Revised Statutes (NRS) §§ 608.140 and 608.016, (5) failure to pay all wages due and owing at termination under NRS §§ 608.140 and 608.020-.050, and (6) wrongful termination in violation of public policy under Nevada law.

The defendants move for summary judgment on all claims on a variety of grounds. Allen opposes. The parties are familiar with the facts, so I repeat them here only as necessary to resolve the motion. I grant the motion as to Allen's claims for declaratory relief and wrongful termination. I deny the motion as to Allen's claims for unpaid overtime under the FLSA (including the issues of willfulness and liquidated damages), FLSA retaliation, and the Nevada statutory claims (except that the statute of limitations is two years for all Nevada statutory claims).

/ / / /

## I. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

### A. Declaratory Relief

The defendants argue that this is not a separate cause of action and has no place in this case because the complaint relies on the Nevada Rules of Civil Procedure, but this case is proceeding in federal court. Allen responds that Nevada law allows her to request a declaration to determine the parties' rights and obligations.

A declaratory relief claim that is duplicative of a plaintiff's other claims is subject to dismissal. *Swartz v. KPMG LLP*, 476 F.3d 756, 765-66 (9th Cir. 2007). The declaratory relief

claim in this case does not serve a purpose that will not be resolved by Allen's substantive claims. I therefore dismiss it.

### B. FLSA Failure to Pay Overtime

#### 1. Exemption

The defendants argue that Allen is exempt from the FLSA's requirement to pay overtime because she was employed in a bona fide administrative capacity. They contend that she was paid a salary that exceeds the salary requirement for this exemption and that she performed non-manual office work directly related to the defendants' business operations in which she exercised independent judgment and discretion.

Allen responds that the parties dispute the scope of her job duties and whether she exercised discretion in performing these duties. She contends that she did not engage in managerial tasks, did not exercise discretion or independent judgment, and performed tasks at the direction of the companies' owner and president, Rony Shamoun (Shamoun).[1] She thus contends a fact dispute precludes summary judgment on the exemption's applicability.

"The FLSA requires employers to pay overtime to covered employees who work more than 40 hours in a week." *Encino Motorcars, LLC v. Navarro*, --- U.S. ----, 138 S. Ct. 1134, 1138 (2018) (citing 29 U.S.C. § 207(a)). But the FLSA exempts some employees from the overtime pay requirement. *Id.* (citing 29 U.S.C. § 213). As relevant here, the FLSA exempts from overtime pay "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

---

[1] Shamoun owned Vocatus and Shamoun's and was the president and CEO for both companies. ECF Nos. 35-3 at 15-16; 35-25 at 1.

This exemption applies if the employee (1) is "compensated not less than $455 per week;" (2) performs "as her primary duty office or non-manual work related to the management or general business operations of the employer or the employer's customers;" and (3) has "as her primary duty the exercise of discretion and independent judgment with respect to matters of significance." *McKeen-Chaplin v. Provident Sav. Bank, FSB*, 862 F.3d 847, 850-51 (9th Cir. 2017) (simplified) (citing 29 C.F.R. § 541.200(a)). "These three conditions are explicit prerequisites to exemption, not merely suggested guidelines." *Id.* (quotation omitted). The "question of how an employee spends his or her workday is one of fact, while the question of whether his or her activities exclude him or her from the overtime-pay requirement is one of law." *Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 391 (9th Cir. 2011). The defendants bear the burden of proving the exemption applies. *McKeen-Chaplin*, 862 F.3d at 850.

Viewing the facts in the light most favorable to Allen, genuine disputes remain regarding the scope of her duties and the level of discretion and independent judgment she exercised. The defendants contend that although Allen had no official job title, she exercised discretion and independent judgment in running the defendants' affairs, including addressing financial, human resources, and regulatory issues without Shamoun's direct involvement. But Allen testified that she could not take any action without Shamoun's direction, could not act on matters of significance for the companies, and was merely a conduit or point of contact for Shamoun. *See* ECF Nos. 35-3 at 10, 14-15, 30, 100-01, 108, 111, 113; 49-3 at 5-8, 13-16; 49-4 at 5-7. *See also Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1128-29 (9th Cir. 2002) (holding genuine issues of fact precluded summary judgment where the plaintiff's job duties were disputed and the plaintiff "testified that he had to call or otherwise communicate with [his supervisor] two to five times a day and that all but the smallest decisions were made by the supervisor"). Although the

defendants argue that Allen's testimony about her lack of discretion should not be believed, credibility is an issue for the finder of fact. *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1035-36 (9th Cir. 2005) (stating that credibility is "a determination that is exclusively within the province of the factfinder at trial, not the district court on summary judgment"). I therefore deny the defendants' motion for summary judgment on Allen's FLSA unpaid overtime claim.

### 2. Willfulness

The defendants argue that the limitation period on Allen's FLSA overtime claim is two years because there is no evidence of a willful violation, which would extend the limitation period another year. They also contend that Allen is not entitled to liquidated damages because they acted in good faith. The defendants argue that there is no evidence of willfulness because Shamoun testified that he attempted to comply with the FLSA by researching exemptions on the DOL's website and by discussing the issue with a payroll company. They also note that although Allen testified that she told Shamoun he was not paying employees correctly, she never complained about her own classification.

Allen responds that genuine issues remain regarding willfulness because she told Shamoun that he had improperly classified as exempt employees who worked over 40 hours per week regardless of the employees' duties. She also testified that she attended a seminar with Shamoun about overtime regulations, so Shamoun knew or should have known the applicable legal requirements.

A plaintiff can recover unpaid overtime for two years counting back from the date she filed her complaint. 29 U.S.C. § 255(a). A willful violation extends the limitation period to three years. *Id.* "To show willfulness, a plaintiff must demonstrate that the employer either knew or

showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Haro v. City of L.A.*, 745 F.3d 1249, 1258 (9th Cir. 2014) (quotation omitted). An employer acts willfully if it knows of and disregards a risk that its conduct is contrary to law. *Id.* "The employer must take affirmative action to assure compliance." *Id.* (simplified).

The issue of liquidated damages is likewise tied to the employer's willfulness or good faith. An employer who violates the FLSA "shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However, if the employer shows that it acted in "good faith" and had "reasonable grounds" to believe that its actions did not violate the FLSA, then "the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216." *Id.* § 260. To prevail on this defense, the employer bears the burden of establishing "that it had an honest intention to ascertain and follow the [FLSA's] dictates" and that it had "reasonable grounds for believing that its conduct complied with" the FLSA. *Flores v. City of San Gabriel*, 824 F.3d 890, 905 (9th Cir. 2016) (simplified). "Whether the employer acted in good faith and whether it had objectively reasonable grounds for its action are mixed questions of fact and law." *Id.* Awarding liquidated damages is "the norm" because liquidated damages "are mandatory unless the employer can overcome the difficult burden of proving both subjective good faith and objectively reasonable grounds for believing that it was not violating the FLSA." *Haro*, 745 F.3d at 1259 (simplified).

Viewing the evidence in the light most favorable to Allen, genuine disputes remain about whether the defendants acted willfully and not in good faith. Allen testified that she attended a seminar with Shamoun in February 2017 about employment laws and overtime, so Shamoun knew or should have known the legal requirements. ECF No. 35-3 at 60-61. She testified that

Shamoun nevertheless would classify any employee who worked more than 40 hours per week as exempt, regardless of that employee's duties. *Id.* at 53-54. According to Allen, at some point in early 2019, she told Shamoun that the way he paid employees was illegal because he put everyone who worked over 40 hours on salary. *Id.* at 60-61, 120. Allen testified that Shamoun responded by saying "fuck the law." *Id.* at 120. A reasonable fact finder could conclude that Shamoun knew or recklessly disregarded the FLSA's requirements and did not act in good faith. I therefore deny this portion of the defendants' motion for summary judgment.

### C. FLSA Retaliation

The defendants argue that there was no adverse action taken against Allen until she was terminated, and any action other than her termination could not have been retaliatory because the defendants did not learn that Allen was the one who complained to the DOL until two days before she was terminated. They also contend the termination cannot support this claim because Allen was fired for her unprofessional conduct on the day she was fired.

Allen responds that after the defendants received materials from the DOL in September 2019 from which they could determine Allen was likely the one who complained, they posted her job on an employment website. She contends that within two days of her admitting to Shamoun that she was the one who complained to the DOL, changes were made at the office that were targeted at her, her login privileges to her computer were revoked, and Shamoun instigated a verbal confrontation that ended in her termination. She also contends that the defendants gave pretextual reasons for her termination, claiming she had abandoned her job when actually she was fired.

Under the FLSA's anti-retaliation provision, an employer may not "discharge or in any other manner discriminate against any employee because such employee has filed any complaint

7

or instituted or caused to be instituted any proceeding under or related to" the FLSA. 29 U.S.C. § 215(a)(3). To prove a retaliation claim, a plaintiff must show that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) "there is a causal link between the protected activity and the adverse employment action." *Roces v. Reno Hous. Auth.*, 300 F. Supp. 3d 1172, 1205 (D. Nev. 2018). Temporal proximity can support an inference of retaliation. *See, e.g.*, *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 869 (9th Cir. 2014) (stating that temporal proximity can support causation in a Title IX retaliation case); *Forsyth v. City of Buena Park*, 691 F. App'x 363, 365 (9th Cir. 2017) (mentioning temporal proximity as circumstantial evidence of causation in an FLSA retaliation case). Additionally, a plaintiff can show an employer's proffered explanation for terminating her "is actually a pretext for retaliation" by "directly persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003), *as amended* (Jan. 6, 2004) (simplified).

There is no dispute that Allen engaged in protected activity by submitting a formal complaint to the DOL or that she suffered an adverse employment action when the defendants fired her. Thus, the only question is whether Allen has submitted sufficient evidence to raise a genuine dispute about causation.

Viewing the facts in the light most favorable to Allen, a reasonable jury could find that but for[2] her complaint to the DOL, the defendants would not have fired her. Allen has presented

---

[2] The Ninth Circuit has applied a mixed-motive standard to FLSA retaliation cases where the plaintiff must show her protected activity was a substantial factor in the defendant's adverse employment decision, and the defendant then bears the burden of showing it would have taken the same action even without a retaliatory motive. *See Knickerbocker v. City of Stockton*, 81 F.3d 907, 911 (9th Cir. 1996). It is unclear whether a plaintiff pursuing an FLSA retaliation claim can

8

evidence that after the DOL sent documents to the defendants from which they could surmise Allen was the source of the complaint, the defendants posted her job on an employment website. ECF No. 35-3 at 56, 81, 87-89.  When she asked Shamoun why her job was posted on the website, Shamoun responded by asking if she was the one who had complained to the DOL, and she admitted that she was. *Id.* at 87-89.  Within two days of the defendants learning that Allen was the one who complained, she was terminated. *Id.* at 56.  This temporal proximity raises an inference of retaliation.

Although the defendants contend that it is clear they fired Allen because she was insubordinate and cussed at the general manager, Matt Lilly, a reasonable jury could find this explanation is pretextual.  The defendants posted Allen's job on an employment website before Allen cussed at Lilly.  Moreover, the day after Allen admitted she was the one who complained to the DOL, Allen could not access her computer, and within two days, new workplace rules were implemented that a reasonable jury could find were targeted at Allen. *Id.* at 56-58.  For example, although all employees were told that smoke breaks must be scheduled through Lilly, Allen was the only smoker. *Id.*  Further, a camera was installed that faced her desk. *Id.* Additionally, Allen has presented evidence that the defendants initially denied that they had fired

---

still rely on a mixed-motive theory following the Supreme Court's decision in *University of Texas Southwestern Medical Center v. Nassar*, which held that Title VII retaliation claims "must be proved according to traditional principles of but-for causation," not the mixed-motive causation test. 570 U.S. 338, 360 (2013).  The FLSA's retaliation provision is similarly phrased to Title VII's, but thus far the Ninth Circuit has not addressed whether *Nassar* governs an FLSA retaliation claim. *See Avila v. L.A. Police Dep't*, 758 F.3d 1096, 1101 n.3 (9th Cir. 2014) (declining to address "whether a 'but-for' instruction is now also required in FLSA retaliation cases"); *id.* at 1107 n.3 (Vinson, D.J. dissenting) (noting that "to date, Ninth Circuit authority provid[es] that the mixed motive/motivating factor analysis is available to retaliation claims under [the FLSA and] accept[ing] that is still the law in this circuit . . ., regardless of what the Supreme Court may decide in FLSA retaliation cases in the future").  Because a reasonable jury could find that but for Allen's protected activity, the defendants would not have fired her, I need not address that issue.

her on October 3 and instead represented to both Allen and an employee with the Nevada Office of the Labor Commissioner that Allen abandoned her job by not reporting to work on October 4 and October 7. *See* ECF Nos. 49-5; 49-6. The defendants now concede that Allen was fired on October 3. *See* ECF Nos. 35 at 5, 12-13 (stating that Lilly fired Allen after she cussed at him); 50 at 14 (stating that the defendants "accept [Allen's] version that she was terminated on October 3, 2019 as true"). Viewing the evidence in the light most favorable to Allen, a reasonable jury could find that but for her complaint to the DOL, the defendants would not have fired her. I therefore deny the defendants' motion for summary judgment on Allen's FLSA retaliation claim.

### D. Failure to Pay Wages for All Hours Worked and Wages Due at Termination

The defendants argue that Allen did not allege a state law overtime claim and, even if she did, it would be preempted by the FLSA. The defendants argue that these claims are subject to a two-year limitation period, and because Allen admits that she was paid for all hours worked during the relevant time, she fails to state a claim.

Allen responds that she asserted a state law overtime claim in the complaint, and she contends that the FLSA does not preempt her claims because they are based on Nevada statutes, not on the common law. She contends that a three-year limitation period applies to her state law claim for unpaid overtime, and a two-year period applies to her claim for failure to pay all hours owed at termination. She notes that although she admits she was paid for the regular hours she worked, she disputes that she was paid overtime from January 2018 through March 31, 2019.

#### 1. Fair Notice

Under Federal Rule of Civil Procedure 8, the complaint's allegations must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Pac. Coast Fed'n of Fishermen's Ass'ns v. Glaser*, 945 F.3d 1076, 1086 (9th Cir. 2019) (quotation

omitted). "A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." *Id.* (quotation omitted).

The complaint gave the defendants fair notice that Allen was asserting an overtime claim under Nevada statutes. In relation to her state law claims, Allen alleged that the defendants owe her overtime and "did not respond to Plaintiff's demand for overtime wages." ECF No. 1-2 at 7-8. As the defendants argue in relation to these claims, Allen does not dispute that she was paid for her regular hours. Consequently, the only basis for these claims is allegedly unpaid overtime. I therefore deny the defendants' motion for summary judgment on this basis.

### 2. Preemption

The defendants' preemption argument is limited to a footnote that cites a single case, which, by the defendants' own characterization, states that the FLSA preempts common law claims. *See* ECF No. 35 at 23 n.8. The case on which the defendants rely does not support their argument that Allen's statutory claims are preempted. In *D'Amore v. Caesars Entertainment Services, LLC*, the court held that the FLSA preempted a common law breach of contract claim for overtime. No. 2:18-cv-01990-JCM-VCF, 2019 WL 8128166, at *4 (D. Nev. Dec. 16, 2019). However, that same court allowed overtime claims under Nevada statutes to proceed. *Id.* at *5-7. Allen asserts only statutory overtime claims. ECF No. 1-2 at 7-10. The defendants offer no other analysis or authority to support their preemption argument. They therefore have not met their burden of showing Allen's state statutory claims are preempted. *See Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227 (9th Cir. 2013) (en banc) ("Parties seeking to invalidate a state law based on preemption bear the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." (quotation omitted)). Consequently, I deny the defendants' motion for summary judgment on this basis.

### 3. Statute of Limitations

The parties agree that a two-year limitation period applies to Allen's claim for failure to pay wages at termination under NRS § 608.040. *See* ECF Nos. 35 at 14-15, 23 n.7; 49 at 17. However, they dispute whether the limitation period for her unpaid overtime claim is governed by a two- or three-year limitation period.

NRS § 608.016 requires an employer to pay its employee "wages for each hour the employee works." Section 608.018 requires an employer to pay a covered employee one and one-half times the employee's regular wage rate for hours worked over 40 in a week or over eight in a single workday. Section 608.020 requires an employer to pay a discharged employee any wages earned and unpaid at the time of discharge. An employee may bring a private right of action for unpaid overtime. *See Neville v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 406 P.3d 499, 504 (Nev. 2017) (en banc).

An express statutory limitation period applies to Allen's claim for unpaid overtime at termination because NRS § 608.135(1) requires a claim under § 608.020 to be brought within two years. After the summary judgment briefing was complete in this case, the Supreme Court of Nevada ruled that claims brought under NRS § 608.018 that were commenced prior to May 27, 2021,[3] are also governed by a two-year limitation period. *Martel v. HG Staffing, LLC*, 519

---

[3] The Supreme Court of Nevada reached this conclusion by relying on the doctrine of analogous limitations. *Martel*, 519 P.3d at 29-30. However, the court noted that this doctrine was statutorily superseded by an amendment to NRS § 11.220, which is the catchall limitation period for claims that do not fall within one of the statutorily defined categories. *Id.* In 2021, the Nevada Legislature amended the catchall provision to cover actions for relief "not hereinbefore provided for . . . regardless of whether the underlying cause of action is analogous to that of any other cause of action with a statute of limitations expressly prescribed by law." NRS § 11.220; Laws 2021, c. 161, § 2. The Supreme Court of Nevada ruled that this amendment was prospective only, so claims pre-dating the amendment's May 27, 2021 effective date are still governed by the analogous limitation period doctrine. *Martel*, 519 P.3d at 29-30; Laws 2021, c. 161, § 4.

P.3d 25, 29-30 (Nev. 2022) (en banc). Allen brought her claims in January 2021. ECF No. 1-2. Accordingly, her state law claims are limited to the period between January 13, 2019 (two years prior to when she filed her complaint) and October 3, 2019 (when she was terminated).

### E. Wrongful Termination

The defendants argue that Allen was an at-will employee, so they could terminate her at any time for any reason, so long as that reason did not violate Nevada public policy. The defendants contend that being fired for complaining to the DOL about unpaid wages does not support this type of claim. Alternatively, they contend that even if it could, the claim fails because she was terminated for her insubordinate conduct, not because of her DOL complaint.

Allen responds that Nevada would recognize a claim for tortious discharge where an employee reports her employer's illegal activity to the appropriate governmental authority. She asserts that she complained to DOL about the defendants' misclassification of its employees generally, and not just her own misclassification. She contends that due to her whistleblowing, the DOL found that multiple employees had been misclassified and those employees received backpay.

To establish a wrongful termination or tortious discharge claim under Nevada law, Allen must show that the defendants terminated her for "refusing to engage in conduct that was violative of public policy" or because she engaged "in conduct which public policy favors." *Bigelow v. Bullard*, 901 P.2d 630, 632 (Nev. 1995). However, the Supreme Court of Nevada "will not recognize an action for tortious discharge when a plaintiff has an adequate, comprehensive, statutory remedy." *Ozawa v. Vision Airlines, Inc.*, 216 P.3d 788, 791 (Nev. 2009).

Because the parties had not adequately addressed whether Allen has an adequate, comprehensive statutory remedy, I directed them to file supplemental briefs on this issue. EFC No. 51. The defendants argue Allen has an adequate remedy under the FLSA's anti-retaliation provision. ECF No. 52. Allen responds that if the defendants are going to contest that she can recover punitive damages under the FLSA's anti-retaliation provision, then that is not an adequate, comprehensive remedy. ECF No. 53.

I predict[4] that the Supreme Court of Nevada would not recognize a public policy discharge tort in these circumstances because Allen has an adequate, comprehensive remedy under the FLSA's anti-retaliation provision in 29 U.S.C. § 215(a)(3). Section 216(b) allows for the recovery of "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages," as well as reasonable attorney's fees and costs. The Supreme Court of Nevada has considered similar statutory remedies as comprehensive and adequate to preclude recognition of a public policy discharge tort. *See Shoen v. Amerco, Inc.*, 896 P.2d 469, 475 (Nev. 1995) (declining to recognize a public policy discharge tort where the statute provided for "reinstatement, recovery of lost wages and benefits, recovery of attorney's fees, and recovery of damages equal to the amount of the lost wages and benefits" (simplified)). I therefore grant the defendants' motion for summary judgment on this claim.

/ / / /

---

[4] Where Nevada's highest court has not decided an issue, I must predict how that court would decide. *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007). I may use "decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004) (quotation omitted).

## II. CONCLUSION

I THEREFORE ORDER that the defendants' motion for summary judgment **(ECF No. 35) is GRANTED in part and DENIED** in part as set forth in this order.

DATED this 12th day of December, 2022.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE